UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | C. A. No. 1:11-cv- |
| v. | ) ) | |
| JAMES J. KONAXIS , | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against defendant James J. Konaxis ("Konaxis"):

### SUMMARY

1.     From April 2008 through May 2010, Konaxis worked as a registered representative at Massachusetts-based broker-dealer Sentinel Securities, Inc. ("Sentinel"). During that period of time, Konaxis defrauded one of his largest individual customers, S.T. (the "Customer"), by repeatedly churning (excessively trading in disregard of the Customer's interests) at least three of her brokerage accounts, including the custodial account for her disabled teenage daughter.  Konaxis earned a total of approximately $550,000 in brokerage commissions as a result of being the registered representative for the Customer's five accounts – representing nearly 75% of his commissions from Sentinel during those two years.

2.     In April 2008, when Konaxis began managing the Customer's accounts at Sentinel, the Customer's investment portfolio was valued at approximately $3.7 million.  On September 11, 2001, the Customer's husband (an officer in the Navy) was killed in the terrorist

attacks on the Pentagon. The Customer's brokerage accounts were originally funded by money the Customer received from the September 11th Victim Compensation Fund.

3.      In or about April 2010 the Customer's investment portfolio had dropped in value by more than $2 million, to approximately $1.6 million. A significant portion of the decrease in the value of the Customer's accounts was attributable to the high commissions that the Customer paid for the excessive trading by Konaxis. Konaxis was terminated by Sentinel in May 2010.

4.      Konaxis lulled the Customer into a false sense of security by assuring her over the phone that her investments at Sentinel were safe, and that while she had suffered losses in the market downturn, the losses were not as great as those suffered by other investors.

5.      By engaging in the conduct alleged herein, Konaxis violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

6.      Based on these violations, the Commission seeks the following relief against the Defendant: (i) an order requiring Konaxis to disgorge his ill-gotten gains and pay pre-judgment interest; (ii) throughout the relevant period, an order requiring Konaxis to pay appropriate civil monetary penalties; and (iii) an order permanently barring Konaxis from participation in an offering of penny stock.

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to the enforcement authority

conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d) of

the Exchange Act [15 U.S.C. §§78u(d)].  This Court has jurisdiction over this action pursuant to

28 U.S.C. §1331, Section 22(a) of the Securities Act [15 U.S.C. §77v(a)], and Sections 21(e) and

27 of the Exchange Act [15 U.S.C. §§78u(e) and 78aa].

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), Section 22(a)

of the Securities Act [15 U.S.C. §77v(a)], and Section 27 of the Exchange Act [15 U.S.C. §78aa]

because Konaxis is an inhabitant of, and conducts business in, the District of Massachusetts and

because a substantial part of the acts constituting the alleged violations occurred in the District of

Massachusetts.   Specifically, during the events alleged in the Complaint, Konaxis resided in the

District of Massachusetts, and also conducted business and engaged in the abusive sales practices

described in this Complaint in the District of Massachusetts.

9.      In connection with the conduct alleged, Konaxis, directly or indirectly, made use

of the means or instrumentalities of interstate commerce, of the mails, the facilities of national

securities exchanges, and/or of the means or instruments of transportation or communication in

interstate commerce.

## DEFENDANT AND RELEVANT ENTITY

10.     James J. Konaxis is an individual residing in Beverly, Massachusetts.  At all times

material to the allegations in this Complaint, Konaxis resided in Massachusetts.  Konaxis was

associated as a registered representative with Sentinel from April 2008 through May 2010, and

as an investment adviser representative with registered investment adviser Sentinel Pension

Advisors, Inc. ("SPA"), an affiliate of Sentinel, from October 2008 through May 2010.

11.     Sentinel Securities, Inc. ("Sentinel") is a Massachusetts-based corporation and a member of the Financial Industry Regulatory Authority ("FINRA").  Sentinel has been registered with the Securities and Exchange Commission since August 9, 2001 as a broker-dealer.  Sentinel has eight branches and approximately fifty registered individuals.  Sentinel has an affiliated registered investment adviser, SPA.

## FACTUAL ALLEGATIONS

### Background

12.     On or about April 4, 2008, Konaxis became formally registered with the Commonwealth of Massachusetts and FINRA as a representative of Sentinel.

13.     On or about April 14, 2008, the Customer opened five brokerage accounts at Sentinel.  The Customer had previously held accounts at prior broker-dealers at which Konaxis was associated.  Two accounts were opened in the Customer's own name (hereinafter, the "Primary" and "Secondary" accounts) and three custodial accounts were opened in the names of each of the Customer's three minor children, including her disabled daughter.  The opening forms for all five of the Customer's accounts listed the account objectives as long-term growth, with moderate risk tolerance.

14.     The Customer's accounts with Konaxis were originally funded by payments from the September 11th Victim Compensation Fund of 2001 that she and her children received in the wake of her husband's death in the September 11, 2001 terrorist attack on the Pentagon.

### Konaxis Churned the Customer's Accounts

15.     Although the Customer designated her five Sentinel brokerage accounts as "non-discretionary" in her account opening forms, Konaxis controlled the trading activity in all five

4

accounts. A non-discretionary account is an account that does not empower a broker to buy and sell securities without the client's prior knowledge and consent.

16.     Moreover, Konaxis "churned" the Primary and Secondary accounts at Sentinel, effecting a multitude of transactions (many of which were inconsistent with the Customer's stated objectives), which he placed without consulting the Customer about the decision to buy and sell those securities on her behalf.

17.     "Churning" occurs when a registered representative controls the trading in a customer's account and excessively trades the Customer's funds in light of the Customer's investment objectives while knowingly or recklessly disregarding the Customer's interests.

18.     One metric used to detect potential churning in a customer's brokerage account is the "annual turnover rate." An annual turnover rate compares the aggregate cost of the trades placed on a customer's behalf to the average month-end value of a customer's account. An annual turnover rate is calculated by dividing the gross dollar value of equity (securities or investments) purchased in a customer's account during a given period by the average month-end value of the securities or investments in the account during that same time period. For example, if a customer purchased $10 million in securities in one year, and the average month-end equity in that customer's account was $1 million during that year, the account turned over 10 times or, in other words, the annual turnover rate was 10. An annual turnover rate of six or higher, depending on the account's objectives, reflects excessive trading. Excessive trading is a component of churning, along with control over an account's trading by the registered representative and knowing or reckless disregard of a customer's interests.

19.     Among the trades placed by Konaxis through at least one of the Customer's accounts were trades placed in a penny stock and in exchange traded funds.

20.    In or about April 2010, the annual turnover rate from in or about May 2008 in the Primary account was 16 and the annual turnover rate in the Secondary account was nine.

21.    Konaxis also churned at least one of the Customer's custodial accounts. In or about February 2010 through April 2010, Sentinel management communicated with Konaxis about capping his commissions in at least one of the Customer's accounts. At or about that time, Konaxis traded heavily in a different account - the Customer's custodial account, which was for the benefit of the Customer's disabled daughter.

22.    In or about April 2010, the annual turnover rate from in or about May 2008 in the Customer's Custodial Account rose to eight.

23.    In or about April 2010, the Customer's total account value had diminished from approximately $3.7 million to approximately $1.6 million. Although the Customer withdrew a portion of money from the accounts for living expenses, as well as for the Customer's daughter's education and medical needs, the value of the Customer's aggregate account portfolio declined significantly. A significant portion of the decrease in the value of the Customer's accounts was attributable to the high commissions that the Customer paid for the excessive trading by Konaxis.

24.    Konaxis knowingly or recklessly disregarded the Customer's interests when he traded excessively in the Customer's accounts and he benefited as a result by generating commissions for himself with each trade. In particular, Konaxis knowingly disregarded the Customer's interests when he churned the Customer's accounts for his own interests because of the significant commissions he earned. At a minimum, Konaxis recklessly disregarded the Customer's interests when he traded excessively in the Customer's accounts, causing the Customer to pay high commissions, notwithstanding the Customer's investment goals.

25.     During the period when Konaxis churned the Customer's accounts, Konaxis lulled the Customer into a false sense of security by assuring her over the phone that her investments at Sentinel were safe, and that while she had suffered losses in the market downturn, the losses were not as great as those suffered by other investors.

26.     By the time Sentinel terminated Konaxis in or about May 2010, Konaxis had earned approximately $550,000 in commissions as a result of being the registered representative for the Customer's five accounts.

### First Claim for Relief
### (Fraud in Violation of Section 17(a) of Securities Act)

27.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 26 above as if set forth fully herein.

28.     Defendant, directly or indirectly, acting intentionally, knowingly or recklessly, by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, in the offer or sale of securities:  (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary to make the statements not misleading; or (c) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon the purchasers of such securities.

29.     By engaging in the conduct described above, Defendant has violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### Second Claim for Relief
### (Violation of Section 10(b) of Exchange Act and Rule 10b-5)

30.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 26 above as if set forth fully herein.

31.     Defendant, directly or indirectly, acting intentionally, knowingly or recklessly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities exchange or the mail:  (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material fact(s) necessary to make the statements made not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon certain persons.

32.     By engaging in the conduct described above, Defendant has violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that this Court enter an order:

A.      Requiring the Defendant to disgorge his ill-gotten gains and losses avoided, plus pre-judgment interest, with said monies to be distributed in accordance with a plan of distribution to be ordered by the Court;

B.      Requiring the Defendant to pay appropriate civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

C.      Permanently barring Konaxis from participating in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. §77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. §78u(d)(6)];

D.  Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

E.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

Rua M. Kelly  (BBO No. 643351)
Eric A. Forni  (BBO No. 669685)
33 Arch Street, 23rd Floor
Boston, Massachusetts  02110
Telephone:  (617) 573-8941 (Kelly direct)
Facsimile:  (617) 573-4590
E-mail:  kellyru@sec.gov

Dated:  March 23, 2011

## CERTIFICATE OF SERVICE

I, Rua M. Kelly, hereby certify that on March 23, 2011 a copy of the foregoing Complaint was filed electronically with the Court's ECF system.  Notice will be sent electronically to the registered participants identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on March 23, 2011.

Rua M. Kelly